Mr. Justice Walker delivered the opinion of the Court. This is a proceeding by petition, on the common law side of the Circuit Court of Independence county, to quash and set aside .an execution, and the return and sale of property had thereunder, and to restore the property, so sold, to the Bank. The petition is, in substance, that Pope and Noland, on the 7th day of February, 1844, recovered against the State Bank, judgment for $3,044 09 in damages and costs, which, together, made $3,091 53, on which execution issued on the 19th December, 1845, credited by $29 58. That, on the 13th of February, 1844, the Bank paid Pope and Noland $3,047. 09, which credit, however, was neither endorsed upon the judgment docket, nor on the execution. Pope was dead at the time the execution issued. That this execution was levied upon several lots of land jn the town of Batesville, on which the Bank house was situated, worth $2,000, That, on the day of sale, the circuit judge, at Chambers, ordered the executions to be stayed until a motion could be heard to set them aside. That the property was sold to defendant Byers, (who was apprised of the payment on the j udgment, and of the order of the judge to suspend the sale,) for the sum of $25. That a deed was made by the sheriff to Byers, who claims, under his purchase, a right to the property. Byers alone answers, and admits the judgment, execution, levy and sale; but denies any personal knowledge of the payment made to Pope and Noland, and all knowledge whatever of the credit of $29 58; denies all notice of the order of the judge, and says that, so far from this, the judge refused to stay the sale, and directed it to be proceeded with. That the Bank Attorney was standing by at the time of the sale, and made no objection to the sale of the property. That he was apprised of no irregularity and bought in good faith, paid the purchase money and took from the sheriff a deed, which he exhibits and relies upon. That, subsequently, he sold to McGuire, and that he sold part of the property to Kuddell, and another part to Patterson, .who hold the property, and have made valuable improvements upon it — all of which sales were made before the Bank had interposed her petition to set aside the sales. He insists on his rights as an innocent purchaser, denies that the circuit court has power to adjudicate the conflicting rights of the parties interested in a summary proceeding by motion, &c. Upon the hearing of the cause, the circuit court refused to quash the execution and set aside the sale, and dismissed the motion with costs. From which decision, the Bank appealed. There can be no doubt of the jurisdiction and power of the common law courts over their process, and also over the officers who execute it. And in the due exercise of this power, such courts may, upon motion, not only quash and set aside their judicial process, and the returns made by the officer under it, but may also, at any time before a deed is executed to the purchaser and approved of and acknowledged and entered of record, upon a proper presentation of facts, quash the process and set aside the sale; because, up to that' time, no title has been perfected in the purchaser to the property so purchased, qnd when he comes before the court to have his deed acknowledged and entered of record, or when it is made to appear, upon the motion of either the plaintiff or the defendant, that the process of the court has improvidently issued, or through the fraud or neglect of the officer, or of the parties, it has been abused to the prejudice of the rights of either the plaintiff or the defendant in execution, the court has the power, and it is its duty, to withhold its assent to an affirmance of such acts, and to set them aside, that a new and more regular proceeding may be had. This power is indispensably necessary to enable the court to execute its judgment. And so far as the mere setting aside of the process, or the return upon it, is concerned, the pówer exists as well after as at the return term of the process: because this is a proceeding between the parties to the proceeding and' the officers of the court, in which the rights of third persons are not involved. But after the court has approved the sale, and caused a deed to be acknowledged and delivered to the purchaser, whereby he has had assured to him a perfect legal title to the property, should the court, at a subsequent period, upon the grouud of fraud, accident or mistake, or for any irregularity in the proceedings, which must of necessity, in most instances, arise out of one or other of these causes, upon motion, assume jurisdiction, and the power to hear and determine the merits of such motion, it would thereby, in effect, take jurisdiction of matters not properly cognizable before it, even upon a regular proceeding instituted in such court for that purpose: for these are all matters properly cognizable before a court of chancery; and, whether presented by bill or motion, does not in any wise change or affect the question itself. The purchaser, when he leaves the common law court with perfect legal title sanctioned and approved by the court, is no longer to be considered before that court; his rights are matured, and he is so far disconnected from the proceeding, that he is not affected with notice of any after order made in regard to his title. And when brought before the court again by notice and motion, or otherwise, he stands there as a party defending his right to hold an estate to which his legal title is perfect; and when the validity of the title itself is assailed for fraud, accident, or mistake arising out of the irregularity of the proceedings or acts of the parties, he has a right to be heard before a tribunal that can rightfully exercise jurisdiction in such matters, with power and process to bring all the parties in interest before it, to put them upon their consciences to answer, to cancel deeds, to restore possession and award equitable compensation. In view of the general powers of the common law and chancery courts, we feel clear upon this point; and although there are several reported cases which would seem to question the correctness of our conclusions, yet, when carefully examined, they will be found to have been made under statutes which authorize such summary proceedings. As, for instance, the Kentucky decisions. In that State, the practice has grown up under an express statute. (1 Morehead & Brown's Laws of Kentucky, 628.) It is true that, in Garlile vs. Carlile, (7 J. J. Marsh. 625,) the court extended its power to act upon cases not embraced within the statute. But there is neither a reason given, nor an authority cited in support of the decision. And in New York, the case of Jackson vs. Roberts, (7 Wend. 88,) was but the dictum of the court. The question of jurisdiction was not raised. In Alabama, it was held, in the case of The Mobile Cotton Pr. vs. Moore & McGee, (9 Porter R. 684) that a sheriff’s sale might be set aside upon motion after the purchaser (a third person) had obtained a deed for the property purchased: but the court, in that case, held, that the common law court had no power to vacate the deed; which makes the decision, in effect, this — that the common law court could indirectly divest the purchaser of his title, when, if a direct application for that purpose had been made, the court would have refused to exercise such jurisdiction. This, however, was a strong and peculiar case. Real estate worth $200,000, and above all incumbrances worth $75 or $100,000, was sold for $75, without the knowledge of either the plaintiff or the defendant, and against his instructions to the sheriff. The purchaser was apprised at once of this, and before he had paid the purchase money or received a deed; and the sheriff also reminded of the instructions given him. The deed was made hastily and under suspicious circumstances ; and, as we may presume from the record, a motion made at the same term that the sale was made, to set it aside. We are not aware, under the Alabama practice, whether any formal acknowledgment is or not required to be made in open court, and an order admitting the deed to record; and if not, such irregularity could only have been . brought to the notice of the court by motion. But under our statute, the practice is different. The purchaser’s title is imperfect until the deed is brought in open court, approved, acknowledged, and admitted of record, an entry of which is required to be made of record. This proceeding is, in effect, an approval of the sale. The plaintiff and defendant still have day in court, and may, if such irregularity exists, repel the application to have the deed acknowledged and certified; and when they fail to do so, they stand in a different attitude from suitors, who have had no such opportunity to contest the regularity of such proceedings. Thus considered, that case has far less weight, as an authority, than other decisions, to which we will briefly re-gfer. In 8 Sm. & Marsh. Rep. 460, Gredley vs. Duncan et al., where property worth $2,000 was sold for $10, to the plaintiff in execution, and after the discharge of the defendant under act of bankruptcy, the court held that a proceeding by motion before the common law court to set aside the sale, could not be entertained, and that the chancery court could alone take jurisdiction of the matter. In the case of Day et al. vs. Graham, (1 Gilman R. 435,) where several disconnected tracts of land were all sold together, and purchased by the plaintiff’s attorney for $50 62, when the land was in fact worth $4,000, to satisfy a balance due upon the judgment of $37 78, the defendant being at the time a lunatic, it was held, after a careful examination of authorities, that such sale could not be set aside by motion before a common law court, but that the party, if aggrieved, must seek redress for such grievance in a court of equity. In the case of Adamson et al. vs. Cummins ad., (5 Eng. Rep.,) where slaves had been sold under judicial process to a third person, a motion was made in the court below to quash the execution and set aside the sale. It was held that a judicial sale might be set aside for fraud, or where the process, under which the sale was made, was void; but as there was no fraud shown in that ease, this court overruled so' much of the decision as set aside the sale, and affirmed it so far as related to quashing the process. This decision, therefore, when limited as to the time for making the motion to set aside the sale as herein expressed, in no wise conflicts with it, but, on the contrary thereof, when viewed in reference to the particular state of the case and the immediate question discussed, the decision quashing the writ, was correct; for to that extent the common law court had control over its process, officers, and also over the parties interested. But where the process is only erroneous, and under which third persons purchase property, we can conceiye of nothing so likely to destroy all confidence in such sales as to permit the purchaser, in this summary and informal proceeding, to be divested of his title. The facts of the case before us, need no particular examination to show that they come within the rule we have laid down. A great length of time had intervened between the purchase and the application to set it aside. Several conveyances of the property purchased had been made and new rights sprung up, which make this a case over which the common law courts could not take jurisdiction. The party, if entitled to redress, must seek it in a court of equity; and, as this may be done, we intimate no opinion as to the merits of the case. The judgment of the Circuit Court must be affirmed.